**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| GGB MANAGEMENT COMPANY, et al., | ) | CASE NO. 4:22-cv-00208 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM ORDER AND** |
| J.P. FARLEY CORPORTATION, et al., | ) | **OPINION** |
| | ) | |
| Defendant(s). | ) | |

Before the Court is Plaintiffs GGB Management Company ("GGB Management"), PJ Markets, Inc. ("PJ Markets"), and Palmer J. Macali, Jr.'s ("Macali") (collectively "GGB" or "Plaintiffs") Motion to Remand (ECF No. 9). Defendant J.P. Farley Corporation ("JP Farley") opposed the motion, arguing that GGB's claims are completely preempted by the Employee Retirement Income Security Act of 1974's ("ERISA") enforcement provisions under 29 U.S.C. § 1132(a). For the reasons discussed below, the Court **GRANTS** in part, and **DENIES** in part, Plaintiff's Motion to Remand.

**I. BACKGROUND**

**A. Factual History**

GGB's claims arise out of a one-month gap in health insurance coverage for the month of December 2017. (ECF No. 1-1, Compl. at PageID #9-10). In or around 2013 or 2014, Macali requested his insurance agent, INA-President Woods, to obtain health insurance through Macali's self-funded insurance, which was managed by GGB Management for employees of grocery stores owned by PJ Markets. (Id. at ¶ 13). Woods and INA arranged for health insurance coverage[1]

---

[1] See ECF No. 1-2, Summary Plan Description for GGB Management Company Group Health Plan (hereinafter the "Plan").

1

through third-party claims administrator, JP Farley.  (Id. at ¶ 14).  On December 1, 2014, GGB Management and JP Farley entered into an Administrative Services Agreement (the "Service Agreement"), which renewed annually, the last of which was effective December 1, 2016, through November 30, 2017.  (Id. at ¶ 15).

The Service Agreement[2] includes the following relevant provisions:

- "WHEREAS, the Plan Sponsor is a corporation or entity that sponsors a self-funded employee benefit plan (the "Plan") that could be included within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any other authorizing law…"[3]

- "Plan Sponsor means GGB Management Company and any successor organization or affiliate of such Employer which assumes the obligations of the Plan and this Agreement."[4]

- "Plan Supervisor is The J.P. Farley Corporation."[5]

- Plan Participant is any person, and his/her covered dependents, who is eligible for enrollment and who is properly enrolled and entitled to benefits from the Plan. Persons eligible for enrollment are those who meet the Plan's eligibility requirements.[6]

- "Summary Plan Description means the document required to be provided under sec. 102 of ERISA or any other authorizing law that describes the terms and conditions under which the Plan operates. In the event of any conflict or inconsistency between the Summary Plan Description and the Plan Document, the terms of the Plan Document will control, when permitted by law.[7]

- "The Plan Sponsor and Plan Supervisor shall advise each other as to matters which come to their respective attentions involving potential legal actions or regulatory enforcement activity which involves the Plan or are related to the activities of either party with respect to the Plan or this Agreement and shall promptly advise each other of legal actions or administrative proceedings which have actually commenced in any jurisdictions."[8]

---

[2] See ECF No. 5-1, Administrative Services Agreement.
[3] Id. at PageID #124.
[4] Id. at PageID #125.
[5] Id.
[6] Id. at PageID #126.
[7] Id.
[8] Id. at PageID #127.

2

- The Plan Supervisor will… Process, issue, and distribute claims checks or drafts as instructed by the Plan Sponsor to Plan Participants, Health Care Providers, or others as may be applicable."[9]

- The Plan Sponsor will… Acknowledge that it is the Plan Sponsor, Plan Administrator, and Named Fiduciary, as these terms are defined in ERISA, whether the flan comes under the jurisdiction of ERISA or not. As such, Plan Sponsor retains full discretionary control, authority, and discretionary responsibility in the operation and administration of the Plan.[10]

In 2017, Macali decided to move away from self-funded insurance and asked Woods to obtain new health insurance for his employees. (Id. at ¶ 16). As the Service Agreement expired on November 30, 2017, Woods and INA needed to obtain a new health insurance plan that would go into effect on December 1, 2017. (Id. at ¶ 17). However, Woods and INA obtained a new health insurance plan that went into effect on January 1, 2018. (Id. at ¶ 18). As a result, employees did not have health insurance coverage for the month of December 2017; plan participants' claims for payment for medical care during that month were either not processed or not made . (Id. at ¶¶ 19-20).

Woods and INA also obtained a two-year Pharmacy Services Agreement (the "Pharmacy Agreement") for the Plan with MaxCare RX LLC ("MaxCare") that was effective from December 1, 2016 through November 30, 2018. (Id. at ¶ 21). Plan participants Robert Bower and Charlene Apel (collectively "Bower and Apel"), amongst other employees, submitted claims for payment pursuant to the Pharmacy Agreement which were either not processed or not made. (Id. at ¶ 22). GGB and plan participants reached a settlement with MaxCare regarding payment for pharmacy services claims, but have not been reimbursed by Defendants for the months of October 2017 through December 2017. (Id. at ¶¶ 24-25).

---

[9] Id. at PageID #129.
[10] Id. at PageID #134.

### B. Procedural History

On June 7, 2019, Bower and Apel filed suit against GGB Management and JP Farley in the Trumbull County Court of Common Pleas, alleging they failed to pay premiums for the Plan and refused to pay claims arising from Apel's medical treatment. (ECF No. 9, Mot. to Remand at PageID #175)[11]. That case was removed to the United States District Court, Northern District of Ohio, Eastern Division[12] and dismissed for failure to prosecute. (*Id*. at PageID #175-67).

On September 22, 2020, Bower and Apel refiled their case in the Trumbull County Court of Common Pleas[13], naming only GGB Management as a defendant. (*Id.* at PageID #176). By 2020, GGB Management had dissolved, thus, GGB Management, along with its successors in interest, PJ Markets and Macali (collectively "GGB"), filed a third-party complaint against Defendants Woods, INA, and JP Farley (collectively "Defendants") for allowing a lapse in coverage of GGB's partially self-funded employee health benefit plan for employees of the grocery stores owned by PJ Markets. *Id.* Thereafter, the Trumbull County court granted JP Farley's motion to strike GGB's third-party complaint and held that the proper procedure was for GGB to commence an independent action and consolidate the two actions*. Id.*

On January 5, 2022, GGB filed an independent indemnification action in the Trumbull County Court of Common Pleas[14], alleging negligence and negligent misrepresentation claims against Woods and INA. (*Id*.; See ECF No. 1-1, Compl. at PageID #6-18). GGB also filed a breach of contract claim against JP Farley as well as an intentional misrepresentation claim against all Defendants. *Id.* GGB then moved to consolidate the indemnification action with the pending *Bower* action, arguing that their claims directly relate to Bower and Apel's claims. (ECF No. 9,

---

[11] See *Bower v. GGB Management Co., et al.,* Trumbull Cty. C.P. Case No. 2019 CV 958.
[12] *See Bower v. GGB Management Co., et al*., Case No. 1:19-CV-01574 (N. Dist. Ohio July 10, 2019).
[13] *See Bower v. GGB Management Co,* Trumbull Cty. C.P. Case No. 2020 CV 1092.
[14] *See GGB Management Co., et al. v. Ins. Navigators Agency, et al*., Trumbull Cty. C.P. Case No. 2022 CV 00015.

Mot. to Remand at PageID #177). After the actions were consolidated, on February 7, 2022, JP Farley removed only the GGB indemnification action to this Court. (See ECF No. 1, Notice of Removal).

## II. LAW AND ANALYSIS

### A. Removal

A defendant may remove any civil action brought in state court over " which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). If a federal court determines that it lacks subject matter jurisdiction, however, the court must remand the case. 28 U.S.C. § 1447(c). The party removing a case bears the burden of establishing jurisdiction. *Nowicki-Hockey v. Bank of Am., N.A.*, 595 F. App'x 420, 421 (6th Cir. 2014) (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006)). Because removal jurisdiction implicates federalism concerns, removal statutes are strictly construed and "all doubts should be resolved against removal." *Mayes v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017) (quoting *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007)).

#### 1. Consolidation

##### a. Consolidated cases maintain their separate identities.

Ohio Rule of Civil Procedure 42(A)(1)(b) regarding consolidation mirrors Federal Rule of Civil Procedure 42(a)(2), both of which provide "if actions before the court involve a common question of law or fact, the court may… consolidate the actions." Accordingly, "the federal court's findings about consolidation are instructive as to consolidation at the state level." *See Rasmussen v. Fleetwood Enterprises, Inc.*, Nos. 06-CV-13883, 06-CV-13884, 2007 WL 163061 at *2 (E. Dist. Mich. Jan. 18, 2007).

In federal court, actions consolidated pursuant to Rule 42(a) maintain separate identities. *See Hall v. Hall*, 200 L.Ed.2d 399, 138. S.Ct. 1118, 1121 (2018) (As to Rule 42(a)(2), "[t]he meaning of the term "consolidate" in this context is ambiguous. But the term has a legal lineage stretching back at least to the first federal consolidation statute, enacted by Congress in 1813…. That history makes clear that one of multiple cases consolidated under the Rule retains its independent character, at least to the extent it is appealable when finally resolved, regardless of any ongoing proceedings in the other cases."); *see also First Nat'l Bank of Pulaski v. Curry,* 301 F.3d 456, 467 (6th Cir.2002) (citing *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97, 53 S.Ct. 721, 77 L.Ed. 1331 (1933)) (Consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, [or make those who are parties in one suit parties in another.]").

Ohio courts have relied on the Supreme Court's holding in *Johnson,* and have held that consolidated actions retain their separate identities. *See Transcon Builders, Inc. v. City of Lorain*, 359 N.E.2d 715, 719 (Ohio Ct. App. 1976) quoting *Johnson supra* ("Although no Ohio court has determined the effect of consolidation on the identity of a case, several federal courts have considered this issue in relation to Rule 42(a)…'consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.'"). Moreover, when cases are consolidated under Ohio Civ. R. 42(A), dismissal of one case does not necessitate the dismissal of the others. *See Carvell v. Kozar*, Nos. 55275, 55277, 1989 WL 69397 at *2 (Ohio Ct. App. June 22, 1989). Thus, in determining whether to remand state-ordered consolidated actions, the actions must be addressed separately.

### b. GGB's state case retains its separate identity from the *Bower* case, therefore GGB's case is removable.

GGB's indemnification case was filed on January 5, 2022. (ECF No. 1-1, Compl. at PageID #: 6). GGB moved to consolidate its case with the *Bower* case on the same day and the motion was granted the following day. (ECF No. 12, Def.'s Opp. at PageID # 193). GGB argues that the consolidated nature of the cases makes removal of only the indemnification case improper. (ECF No. 9, Mot. to Remand at PageID #178).

GGB's argument would prevail if consolidation destroyed the cases' separate identities and merged them into a single action. However, as previously discussed, under both Ohio and federal law, consolidated actions maintain their separate identities. GGB even admits in its Motion to Remand that consolidated cases maintain separate identities. *Id.* GGB offers no authority for its assertion that removal of one consolidated case is improper. Rather, GGB states it "can find no authority permitting one action of a consolidated case to be removed to federal court after a state court has ordered consolidation." *Id.* Finally, GGB offers a conclusory argument that removal of the indemnification case would allow this Court to "nullify" a state order. (*Id*. at Page ID #179).

JP Farley's arguments in favor of removal are more persuasive. The Court agrees that the separate identities of the state cases allow the Court to consider the merits of jurisdiction over the indemnification case. The Court also agrees that, if GGB's argument is accepted, GGB's consolidation of its indemnification case with the *Bower* case would provide an avenue for GGB to circumvent the federal removal statute.

While GGB did not make an argument that the consolidated nature of the cases made removal untimely, the Court notes the impropriety of such a position. If the consolidation of the state cases merged them into one cause of action, as GGB argues, JP Farley's removal would have been rendered untimely; this is true even though JP Farley filed its Notice of Removal within the

statutory time limit.[15] If GGB is correct, plaintiffs could use consolidation as a tool to prevent defendants from timely removing actions to federal court. The Court cannot agree with GGB's argument, which flies in the face of the authority previously cited. Accordingly, the Court finds that GGB's indemnification case retains its separate identity and its consolidation with a pending state case does not affect its removability.

### B. Federal Question Jurisdiction

A district court has federal question jurisdiction when the action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[T]he vast majority of cases brought under the general federal-question jurisdiction . . . are those in which federal law creates the cause of action." *Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1012 (6th Cir. 2018) (quoting *Hampton v. R.J. Cormann R.R. Switching Co.*, 683 F.3d 708, 711–12 (6th Cir. 2012)). To determine whether a complaint asserts a federal cause of action, federal courts employ the well-pleaded complaint rule. *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003). Under this rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Finally, Defendants may not remove a case to federal court "on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint." *Id.*

There are, however, exceptions to the well-pleaded complaint rule. One exception is the artful-

---

[15] "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1).

pleading doctrine: plaintiffs may not "avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (quotation marks, citations, and edits omitted). A related exception is the complete-preemption doctrine: removal is proper "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058 (2003).

1. **Artful-pleading Doctrine**

Under the artful-pleading doctrine, a federal court will have jurisdiction if "a plaintiff has carefully drafted the complaint so as to avoid naming a federal statute as the basis for the claim, and the claim is in fact based on a federal statute." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007); *see also Franchise Tax Bd. of State of Cal. v. Laborers Vacation Trust for Southern Cal. et al.*, 463 U.S. 1, 22, 103 S.Ct. 2841 (1983). Although GGB asserts four state, common-law causes of action: breach of contract[16], negligence, negligent misrepresentation, and intentional misrepresentation, the facts in GGB's complaint implicate a federal cause of action against JP Farley under the ERISA statute.

GGB's complaint[17] specifies, in pertinent part:

> 13. Macali requested that Woods obtain health insurance through Macali's self-funded insurance for PJ Market grocery store employees.
> 14. Woods and INA arranged for coverage through a third-party administrator, JP Farley, with stop/loss coverage/excess coverage through Excess RE.
> …

---

[16] Under Ohio law, the elements of a common law breach of contract are (1) that a contract existed, (2) that the plaintiff fulfilled his obligations, (3) that the defendant unlawfully failed to fulfill his obligations, and (4) that damages resulted from this failure. *Lawrence v. Lorain County Cmty. Coll.*, 127 Ohio App.3d 546, 713 N.E.2d 478, 480 (1998).
[17] See generally ECF No. 1-1, Compl.

> 31. GGB Management and JP Farley entered into the Service Agreement. The last renewal of the Service Agreement was for the term December 1, 2016, through November 30, 2017.
> 32. Article III, paragraph 3.6 of the Service Agreement provides JP Farley was the Plan Supervisor and responsible for processing, issuing, and distributing claims checks.
> …
> 34. Plan participants submitted claims for payment prior to November and December 2017 which were either not processed or allegedly processed but benefit payments not made under the Service Agreement.
> …
> 36. Plan participants incurred medication or pharmacy costs, during the period from October 1, 2017 to December 31, 2017 and elective medical procedures from December 1, 2017 to December 31, 2017.
> 37. The aforementioned plan participants submitted claims for payment to JP Farley.
> 38. Many of these claims were not processed or were allegedly processed but benefit payments were not made per the contract.
> …
> 63. Plaintiffs have satisfied all conditions precedent entitling them to coverage, processing and payment of claims, including paying all premiums due and, where applicable, meeting necessary deductibles, co-payments, and co-insurance requirements.
> 64. JP Farley is in breach of contract by their actions and inactions as pled herein, including, but not limited to, their failure to timely pay and process claims as submitted.
> ….

Both the state claim for breach of contract and the federal claim for violating ERISA rely on the same premise: that JP Farley failed to process claims or make claim payments to health insurance benefit plan participants in the agreed upon manner, pursuant to the Service Agreement. GGB does not explicitly make an ERISA claim on the face of the Complaint, however, GGB is seeking relief for JP Farley's alleged violations of its contractual obligations pursuant to an ERISA plan. Thus, GGB has effectively made a claim against JP Fairly that is subject to ERISA enforcement.  And, as discussed *infra*, the ERISA statute has its own civil enforcement scheme and is intended to

10

provide an exclusive set of remedies

### 2. Complete Preemption

Under the complete preemption doctrine, a federal court will have jurisdiction "when the complaint, on its face, alleges only state law claims but when those claims would also state a cause of action under a federal statute that 'completely preempts' an area of state law." *Kelton v. Cleveland Clinic Found.*, No. 1:12 CV 511, 2012 WL 1906363, at *2 (N.D. Ohio May 25, 2012); *Peters v. Lincoln Elec.*, 285 F.3d 456, 469 n.11 (6th Cir. 2002) (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). In *Metropolitan*, the Supreme Court held that the complete preemption exception applies to claims arising under ERISA. *Metropolitan Life Ins. Co.*, 481 U.S. at 64-67. The Supreme Court has limited the complete preemption doctrine to exclude "mere incorporation of federal statutory standards into a state-law tort action." *AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004) (citing *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 807–12 (1986)). Rather, "'complete preemption' applies only in the extraordinary circumstances when Congress intends, not merely to preempt a certain amount of state law, but also to transfer jurisdiction to decide the preemption issue from state to federal court." *Peters*, 285 F.3d at 469 n.11 (citing *Metropolitan Life Ins. Co.,* 481 U.S. at 65–66

### a. ERISA Preemption

As to ERISA, "because Congress has blotted out (almost) all state law on the subject of ERISA plans, 'a complaint about [such a plan] rests on federal law no matter what label its author attaches.'" *K.B. by and through Qassis v. Methodist Healthcare – Memphis Hospitals*, 929 F.3d 795, 800 (6th Cir. 2019) (quoting *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1075 (7th Cir. 1992)). The Sixth Circuit clarified that in order to fall within the complete preemption

11

exception, a court must conclude that the common law claim under state law should be characterized as a superseding ERISA action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," as provided in 29 U.SC. § 1132(a)(1)(B). *Peters,* 258 F.3d at 469 n. 11; *Wright v. General Motors Corp.,* 262 F.3d 610 (6th Cir. 2001); *Warner v. Ford Motor Co.,* 46 F.3d 531, 533–534 (6th Cir.1995).

In *Metropolitan*, the Supreme Court held that state common law claims for benefits under an employee benefit plan regulated by ERISA are preempted as long as the lawsuit "relates to an employee benefit plan." *Metropolitan Life Ins.*, 481 U.S. at 63-63. As to the scope of ERISA preemption, the Supreme Court has found that state-law claims regarding improper processing of claims are preempted by ERISA. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) (Employee brought common-law breach of contract claims against the insurance company that issued his employer's group insurance policy. The Supreme Court held "the common law causes of action asserted in respondent's complaint, each based on alleged improper processing of a benefit claim under an employee benefit plan, 'relate to' an employee benefit plan and therefore fall under ERISA's pre-emption clause.").

The parties disagree as to the proper analytical framework to apply to GGB's claims against Defendants. GGB argues that it is not seeking to enforce the terms of an ERISA plan and that its claims do not conflict with or duplicate ERISA's enforcement provision, therefore the *Davila*[18] test applies to determine whether their claims are preempted. (ECF No. 9, Mot. to Remand at

---

[18] The Supreme Court created a two-part test to determine whether an action that does not specifically make an ERISA claim is nevertheless completely preempted. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). The prongs, as understood by the Sixth Circuit are "(1) the plaintiff complains about the denial of benefits to which he is entitled 'only because of the terms of an ERISA-regulated employee benefit plan' and (2) the plaintiff does not allege the violation of any "legal duty (state or federal) independent of ERISA or the plan terms[.]" *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 613 (6th Cir. 2013) *quoting Davila*, 542 U.S. at 210. *Davila* applies to actions brought under 29 U.S.C. §1132(a)(1)(B). *Id.*

PageID # 178-180; ECF No. 15, Pls.' Reply in Supp. at PageID #208.) JP Farley argues that *Davila* does not apply here, as *Davila* is limited to claims made by plan participants or beneficiaries pursuant to 29 U.S.C. § 1132(a)(1)(B)[19] and that GGB's claims fall under 29 U.S.C. § 1132(a)(3)[20] because GGB is a plan fiduciary. (ECF No. 12, Def.'s Opp. at PageID #194-5). The issue turns on whether GGB has asserted state-law claims that relate to ERISA and whether INA, Woods, and JP Farley are considered participants, beneficiaries, or fiduciaries.

    i.   **GGB's claims against INA and Woods are not preempted.**

GGB contends that Defendants INA and Woods knew, or should have known, that the nature of Plaintiffs' business required them to maintain uninterrupted health insurance coverage. (ECF. 1-1, Compl. at PageID #13 ¶ 45). GGB also asserts that INA and Woods failed to provide continuous coverage, causing a one-month gap in coverage during December 2017. (Id. at PageID #14 ¶ 46). Here, GGB's allegations against INA and Woods do not implicate a violation in relation to an ERISA plan ; GGB's contention is that they failed to timely secure one entirely and, therefore, there was no plan under which GGB's employees could submit claims for payment.

GGB also contends that Defendants INA and Woods negligently and intentionally made false representations to GGB that its employee health insurance coverage would continue with no interruption in coverage protection. (Doc 1-1, Compl. at PageID #15 ¶ 54-5). GGB alleges that they made these false representations with knowledge of their falsity, or with utter disregard and recklessness to their accuracy. (Id. at ¶ 70). These allegations speak to Woods and INA's capacities as non-fiduciary insurance professionals.

---

[19] "A civil action may be brought… by a participant or beneficiary… to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).
[20] "A civil action may be brought… by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

13

Neither the Plan nor the Service Agreement name INA or Woods as fiduciaries, nor do they qualify as fiduciaries under ERISA because they (1) have no authority to grant or deny claims and (2) have no discretionary control, or authority over a plan's management, administration, or assets. *See Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 2005 WL 1282186 (6th Cir. 2005) (When [an] insurance company administers claims for [an] employee welfare benefit plan and has authority to grant or deny claims, [the insurance] company is an ERISA "fiduciary."); *see also Cultrona v. Nationwide Life Ins. Co.*, 936 F.Supp.2d 832, 2013 WL 1284344 (N. Dist. Ohio March 26, 2013) (For purposes of ERISA, a "fiduciary" not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets.).

The Sixth Circuit has held that ERISA does not preempt state-law claims brought against non-fiduciary service providers in connection with professional services rendered to an ERISA plan. *Penny/Ohlmann Neiman, Inc. (PONI) v. Miami Valley Pension Corp.*, 399 F.3d 692 (6th Cir. 2005); *see also Smith v. Provident Bank,* 170 F.3d 609, 613 (6th Cir. 1999) (Defendants removed state-law action alleging wrongful removal of shares from a participant's [ERISA] pension plan. The court held that ERISA preempted all claims against the former plan trustee as a fiduciary and all fiduciary duty claims, but does not preempt claims against parties who were not ERISA fiduciaries.). Accordingly, GGB's claims against INA and Woods fall squarely within the confines of state law and may be remanded.

      **ii.    GGB's claims against JP Farley are preempted.**

      **1) Breach of Contract**

GGB claims that JP Farley failed to process and pay claims submitted under the Insurance and Pharmacy Agreements, thereby failing to perform their contractual obligations pursuant to the

Service Agreement. (ECF No. 9, Pls.' Mot. to Remand at PageID #181.) ("GGB complains that JP Farley breached its contract by continuing to accept GGB's monthly payments and refusing to perform its corresponding duties under the contract") *Id*. The Court finds, and the parties concede, that the Plan along with the Service Agreement (collectively) qualify as an ERISA plan. Because GGB's claims are for JP Farley's failures relating to processing and making payments for claims, as contractually required under the Service Agreement, they relate to the Plan as required by the Supreme Court in *Metropolitan supra* and *Pilot Life Ins. Co. supra.*

Next, to determine if GGB can be characterized as a participant or beneficiary, the Court turns to the definitions of the terms in ERISA. 29 U.S.C. §1002(7) states;

> The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit."

A participant, then, is an employee or former employee who can receive a benefit plan from an employer. The Supreme Court agrees, "the term 'participant' is naturally read to mean either 'employees in, or reasonably expected to be in, currently covered employment,'… or former employees who 'have… a reasonable expectation of returning to covered employment.'" *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989). "Beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 28 U.S.C. 1002(8). GGB cannot be considered a beneficiary or a participant, and therefore the *Davila* test does not apply.

15

Defendants correctly argue that Section 1132(a)(3) is the controlling section because GGB is named both "manager" and "fiduciary" in the Plan and Service Agreement, as well as in GGB's Complaint. GGB argues that there is no basis for complete preemption under §1132(a)(3). When considering whether complete ERISA preemption applies, the Supreme Court instructs lower courts to look to the intent of the legislation and "… to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995).

The Sixth Circuit has found "in enacting ERISA and broadly preempting state law, Congress intended to standardize the administration of employee benefit plans, including the duties and liabilities of fiduciaries. It is not a valid argument against preemption to say that the state seeks to impose greater obligations than Congress did." *Smith*, 170 F.3d at 613. To this point, ERISA preempts state laws that provide an "alternative enforcement mechanism." *Blue Cross*, 514 U.S. at 656. GGB, despite claiming that they are not seeking restitution under an ERISA plan, are seeking indemnification from JP Farley for claims related to an ERISA plan. To claim that this is anything other than seeking an alternative enforcement mechanism through the state court strains credulity. Accordingly, GGB's breach of contract claim is completely preempted.

### 2) Intentional Misrepresentation

Although the remaining intentional misrepresentation claim against JP Farley is purely a state-law claim, the Court may exercise supplemental jurisdiction over this claim and keep the claims against JP Farley together.

Fed. R. Civ. P. 21 states, in relevant part, ". . . the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." The claims against Woods and INA do not have an independent federal cause of action and thus may be severed and remanded

to state court. Supplemental jurisdiction "encompasses 'other claims' in the same case or controversy as a claim within the district courts original jurisdiction." *City of Chicago v. Internatl. College of Surgeons*, 522 U.S. 156, 173 (1997). It is discretionary, and the court may decline supplemental jurisdiction if:

1. The claim raises a novel or complex issue of state law;

2. The claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

3. The district court has dismissed all claims over which it has original jurisdiction, or

4. In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c). When considering supplemental jurisdiction, the "state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

All claims against JP Farley derive from their alleged failure to perform their contractual obligation to process or make insurance claim payments for an ERISA health-coverage plan, pursuant to the Insurance and Pharmacy Agreements. Therefore, they derive from a common nucleus of operative fact and the Court may exercise supplemental jurisdiction over the intentional misrepresentation claim against JP Farley.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part, and **DENIES** in part, Plaintiff's Motion to Remand. Plaintiffs' state law claims against John T. Woods and Insurance Navigators Agency, Inc. are hereby **REMANDED** to state court and Plaintiffs' breach of contract and intentional misrepresentation claims against J.P. Farley Corporation shall remain in this Court.

**IT IS SO ORDERED.**

Date: February 21, 2023

_____
**CHARLES E. FLEMING
UNITED STATES DISTRICT JUDGE**