UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GGB MANAGEMENT COMPANY, et al., | ) | CASE NO. 4:22-cv-00208 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM ORDER AND** |
| J.P. FARLEY CORPORTATION, | ) | **OPINION** |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant J.P. Farley Corporation's ("JP Farley") Motion to Dismiss Counts III and IV of Plaintiffs GGB Management Company ("GGB"), PJ Markets, Inc. ("PJ Markets"), and Palmer Macali, Jr.'s ("Macali") (collectively "Plaintiffs") Complaint (ECF No. 5). For the reasons discussed below, the Motion is **GRANTED**.

## I. BACKGROUND

### A. Factual Background

GGB's claims arise out of a one-month gap in health insurance coverage for the month of December 2017. (ECF No. 1-1, Compl. at PageID #9-10). In or around 2013 or 2014, Macali asked his insurance agent, John T. Woods ("Woods) and Insurance Navigators Agency, Inc. ("INA"), to obtain health insurance through Macali's self-funded insurance, which was managed by GGB for employees of grocery stores owned by PJ Markets. (*Id.* at PageID #9, ¶ 13). The insurance agent arranged for health insurance coverage[1] through third-party claims administrator, JP Farley. (*Id*. at ¶ 14). On December 1, 2014, GGB and JP Farley entered into an Administrative Services Agreement (the "Service Agreement"), which renewed annually, the last of which was

---

[1] See ECF No. 1-2, Summary Plan Description for GGB Management Company Group Health Plan (hereinafter the "Plan").

1

effective December 1, 2016, through November 30, 2017. (*Id*. at ¶ 15).

The Service Agreement[2] includes the following relevant provisions:

- "WHEREAS, the Plan Sponsor is a corporation or entity that sponsors a self-funded employee benefit plan (the "Plan") that could be included within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any other authorizing law…"[3]

- "Plan Sponsor means GGB Management Company and any successor organization or affiliate of such Employer which assumes the obligations of the Plan and this Agreement."[4]

- "Plan Supervisor is The J.P. Farley Corporation."[5]

- Plan Participant is any person, and his/her covered dependents, who is eligible for enrollment and who is properly enrolled and entitled to benefits from the Plan. Persons eligible for enrollment are those who meet the Plan's eligibility requirements.[6]

- "Summary Plan Description means the document required to be provided under sec. 102 of ERISA or any other authorizing law that describes the terms and conditions under which the Plan operates. In the event of any conflict or inconsistency between the Summary Plan Description and the Plan Document, the terms of the Plan Document will control, when permitted by law.[7]

- "The Plan Sponsor and Plan Supervisor shall advise each other as to matters which come to their respective attentions involving potential legal actions or regulatory enforcement activity which involves the Plan or are related to the activities of either party with respect to the Plan or this Agreement and shall promptly advise each other of legal actions or administrative proceedings which have actually commenced in any jurisdictions."[8]

- The Plan Supervisor will… Process, issue, and distribute claims checks or drafts as instructed by the Plan Sponsor to Plan Participants, Health Care Providers, or others as may be applicable."[9]

- The Plan Sponsor will… Acknowledge that it is the Plan Sponsor, Plan Administrator, and Named Fiduciary, as these terms are defined in ERISA, whether the flan comes under the

---

[2] See ECF No. 5-1, Administrative Services Agreement.
[3] Id. at PageID #124.
[4] Id. at PageID #125.
[5] Id.
[6] Id. at PageID #126.
[7] Id.
[8] Id. at PageID #127.
[9] Id. at PageID #129.

2

jurisdiction of ERISA or not. As such, Plan Sponsor retains full discretionary control, authority, and discretionary responsibility in the operation and administration of the Plan.[10]

The insurance agent also obtained a two-year Pharmacy Services Agreement (the "Pharmacy Agreement") for the Plan with MaxCare RX LLC ("MaxCare") that was effective from December 1, 2016 through November 30, 2018. (*Id.* at PageID #10, ¶ 21). Plan participants Robert Bower and Charlene Apel (collectively "Bower and Apel"), amongst other employees, submitted claims for medical and pharmaceutical payments which were either not processed or not paid. (*Id.* at ¶ 22). Plaintiffs are suing JP Farley for breach of contract for failing to process or payout insurance claims and for intentional misrepresentation. (*Id.* at PageID #16-18).

**B. Procedural Background**

On June 7, 2019, Bower and Apel filed suit against GGB and JP Farley in the Trumbull County Court of Common Pleas, alleging they failed to pay premiums for the Plan and refused to pay claims arising from Apel's medical treatment. (ECF No. 9, Mot. to Remand at PageID #175)[11]. That case was removed to the United States District Court, Northern District of Ohio, Eastern Division[12] and dismissed for failure to prosecute. (*Id.* at PageID #175-67).

On September 22, 2020, Bower and Apel re-filed their case in the Trumbull County Court of Common Pleas[13], naming only GGB as defendant. (*Id.* at PageID #176). By 2020, GGB had dissolved, thus, GGB, along with its alleged successors in interest, PJ Markets and Macali, filed a third-party complaint against Woods, INA, and JP Farley for allowing a lapse in coverage of GGB's partially self-funded employee health benefit plan for employees of the grocery stores owned by PJ Markets. *Id.* Thereafter, the Trumbull County court granted JP Farley's motion to

---

[10] Id. at PageID #134.
[11] See *Bower v. GGB Management Co., et al.,* Trumbull Cty. C.P. Case No. 2019 CV 958.
[12] See *Bower v. GGB Management Co., et al.*, Case No. 1:19-CV-01574 (N. Dist. Ohio July 10, 2019).
[13] See *Bower v. GGB Management Co,* Trumbull Cty. C.P. Case No. 2020 CV 1092.

strike GGB's third-party complaint and held that the proper procedure was for GGB to commence an independent action and consolidate the two actions. *Id.*

On January 5, 2022, GGB filed an independent indemnification action in the Trumbull County Court of Common Pleas[14], alleging negligence and negligent misrepresentation claims against Woods and INA. (*Id.*; See ECF No. 1-1, Compl. at PageID #6-18). GGB also filed a breach of contract claim against JP Farley as well as an intentional misrepresentation claim against all Defendants. *Id.* GGB then moved to consolidate the indemnification action with the pending *Bower* action, arguing that their claims directly relate to Bower and Apel's claims. (ECF No. 9, Mot. to Remand at PageID #177). After the actions were consolidated, on February 7, 2022, JP Farley removed only the GGB indemnification action to this Court. (See ECF No. 1, Notice of Removal). On March 8, 2022, Plaintiffs moved to remand this action back to state court (ECF No. 9) and JP Farley opposed the motion on April 7, 2022 (ECF No. 12). On February 21, 2023, this Court issued an order (ECF No. 16), granting in part and denied in part, Plaintiff's motion to remand. The Court remanded Plaintiffs' claims against Woods and INA and the claims against JP Farley remained under this Court's jurisdiction. (*Id.*).

## II. LEGAL STANDARD

A party may move to dismiss a claim against it when the claimant has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion to dismiss tests the complaint's legal sufficiency. *Riddle v. Egensperger*, 266 F.3d 542, 550 (6th Cir. 2001). To survive a 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is

---

[14] *See GGB Management Co., et al. v. Ins. Navigators Agency, et al.*, Trumbull Cty. C.P. Case No. 2022 CV 00015.

4

plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Id.* Naked assertions, recitals of elements, and legal conclusions will not withstand a 12(b)(6) inquiry. *Id.* "Factual allegations must . . . raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III. LAW AND ANALYSIS

#### A. Standing

JP Farley argues that Plaintiffs' lack standing to bring their breach of contract claim because 1) PJ Markets and Macali are not parties to the Service Agreement and 2) GGB is a dissolved entity which cannot sue under Ohio law. (ECF No. 5, Mot. to Dismiss at PageID #112).

**1. PJ Markets and Palmer Macali lack standing to bring a breach of contract claim against JP Farley.**

JP Farley's assertion that PJ Markets and Macali are not parties to the Service Agreement is based on 1) the language of Service Agreement stating "T[his] Administrative Services Agreement is made and entered into…between GGB Management Company…and The J.P. Farley Corporation" (ECF No. 5-1, Service Agreement at PageID #124); 2) PJ Markets and Macali are not mentioned in the Service Agreement as parties (ECF No. 5, Mot. to Dismiss at PageID #113); and 3) and PJ Markets and Macali are not intended third-party beneficiaries of the Service Agreement that can enforce the contract (*Id.*).

"Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio." *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St. 3d 158, 160, 566 N.E.2d 1220 (1991) ("Third-party beneficiaries have the rights of the parties in privity of contract."). "The Supreme Court of Ohio has indicated that an 'intent to benefit' test is used to decide 'whether a third-party is an intended or incidental beneficiary.'" *Fed. Ins. Co. v. Fredericks*, 29 N.E.3d 313, 323 (Ohio Ct. App. 2015); quoting *Hill v. Sonitrol of Southwestern*

5

*Ohio, Inc.*, 36 Ohio St.3d 36, 40, 521 N.E.2d 780 (1988); quoting *Norfolk & Western Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir.1980). "An intended beneficiary is one who has enforceable rights under the contract, in contrast to an incidental beneficiary, who has no rights of enforcement." *Fredericks*, 29 N.E.3d at 323; quoting *Berge v. Columbus Community Cable Access,* 136 Ohio App.3d 281, 303, 736 N.E.2d 517 (Ohio Ct. App. 1999); citing *Hill*, 36 Ohio St.3d at 40.

The "intent to benefit" analysis requires a showing that the promisee intended for a third-party to benefit from the contract. *Hill*, 36 Ohio St.3d at 40. The performance of the promise *must* satisfy a duty owed to the beneficiary. *Id*. A mere conferring of a benefit on the third-party beneficiary by the performance of the promise is insufficient. *Id*. The intent to benefit must be included within the terms of the agreement. *Id*.; citing *Huff v. FirstEnergy Corp.,* 130 Ohio St.3d 196, 200, 2011-Ohio-5083, 957 N.E.2d 3 (2011) ("Ohio law thus requires that for a third party to be an intended beneficiary under a contract, there must be evidence that the contract was intended to directly benefit that third party. Generally, the parties' intention to benefit a third party will be found in the language of the agreement.").

Upon observing the Service Agreement, the Court cannot find any language that supports the conclusion that PJ Markets or Macali were intended third-party beneficiaries. Indeed, the language of the Service Agreement names GGB and JP Farley as parties to the contract. (ECF No. 5-1, Service Agreement at PageID #124). Moreover, Article II, Sections 2.2 through 2.4 of the Service Agreement state:

> "2.2 The Parties enter into this Agreement as independent contractors and not as agents of each other. Neither party shall have any authority to act in any way as the representative of the other, or to bind the other to any third party, except as specifically set forth herein.
>
> 2.3 The Parties acknowledge that:

> (a) this is a contract for administrative services only as specifically set forth herein;
> (b) the Plan Supervisor shall not be obligated to disburse more in payment for Claims, or other obligations arising under the Plan, than the Plan Sponsor has made available in the Plan Sponsor Account or any other designated account; and
> (c) this Agreement shall not be deemed a contract of coverage under any laws or regulations. The Plan Supervisor does not insure, guarantee, or underwrite the liability of the Plan Sponsor under the Plan. The Plan Sponsor has total responsibility for payment of Claims under the Plan, all loss of discounts, penalties and fees for late payment of claims, and all expenses incidental to the Plan.
>
> 2.4  Except as specifically set forth herein, this Agreement shall inure to the benefit of and be binding upon the Parties hereto and their respective legal representatives and successors; provided, however, neither party may assign this Agreement or any or all of its rights or obligations hereunder (except by operation of law) without the prior written consent of the other, which consent may not be unreasonably withheld."

(*Id*. at PageID #126).  The language within the Service Agreement is clear that GGB and JP Farley contemplated and agreed that neither could bind the other to a third-party; that GGB, as the Plan Sponsor, was solely responsible and liable for payment of claims; and that neither party could assign their rights under the contract without prior written consent of the other. *Id*.  Article IV, Section 4.22 of the Service Agreement provides "The Plan Sponsor will…[a]ccept responsibility for and hold Plan Supervisor harmless for any verification or processing errors occurring in connection with Plan Supervisor's obligations and services hereunder, if Plan Sponsor has failed to comply with terms, obligations, and responsibilities of the Plan Sponsor as contained in this Agreement." (Id. at PageID #135).  This language bolsters JP Farley's argument that PJ Markets and Macali were not intended third-party beneficiaries of the contact. It also demonstrates the intent of GGB and JP Farley to have privity of contract with each other and for GGB to be responsible for, and hold harmless, JP Farley for the conduct alleged in this action.  The fact that PJ Markets and Macali would benefit from JP Farley's performance of the terms in the Service

Agreement is merely an incidental benefit. Accordingly, PJ Markets and Macali are not intended third-party beneficiaries of the Service Agreement.

    **a. PJ Markets and Macali are not GGB's successors in interest**.

Plaintiffs failed to address JP Farley's third-party beneficiary argument in their opposition, and instead, only focused on the argument that PJ Markets and Macali are GGB's successors in interest. (ECF No. 19, Opp. at PageID #233, 36-38). Plaintiffs rely on the factors enumerated in *Schilling v. Interim Healthcare of the Upper Ohio Valley, Inc.*, Case No. 2:06-CV-487, 2008 WL 2355831, *3 (S.D. Ohio 2008) to determine whether PJ Markets and Macali are GGB's successors in interest. (ECF No. 19, Opp. at PageID #237). The factors are:

> "(1) whether the successor employer had prior notice of the claim against the predecessor; (2) whether the predecessor is able, or was able prior to the purchase, to provide the relief requested; *and* (3) whether there has been sufficient continuity in the business operations of the predecessor and successor."

*(Id.*; citing *Schilling*, 2008 WL 2355831, *3 (emphasis added)). Plaintiffs argue that this analysis is satisfied because PJ Markets and Macali assumed GGB's responsibilities for managing the benefits plan for PJ Markets' employees and were therefore aware of the claims regarding unpaid health benefits and prescription benefits as well as Macali being the President of both GGB and PJ Markets. (ECF No. 19, Opp. at PageID #237-38). However, Plaintiffs failed to analyze the second and third factor of the analysis. (*Id.*).

The Court agrees with JP Farley's argument that Plaintiffs' allegation that PJ Markets and Macali are successors in interest is conclusory and the allegation that they took over GGB's responsibilities as to managing PJ Markets' employees benefits plans does not make them so. (ECF No. 20, Rep. in Supp. at PageID #243-44). Plaintiff cites no case law to support this argument and pled no facts alleging that PJ Markets and Macali purchased GGB. This alone is

insufficient to withstand 12(b)(6) scrutiny. *Ashcroft,* 556 U.S. at 678 ("Naked assertions, recitals of elements, and legal conclusions will not withstand a 12(b)(6) inquiry."). Because PJ Markets and Macali are neither intended third-party beneficiaries to the Service Agreement or GGB's successors in interest, they lack standing to bring a breach of contract claim against JP Farley.

### 2. GGB Management Company

JP Farley argues that GGB lacks standing to bring a breach of contract claim against JP Farley because it is a dissolved corporation. (ECF No. 5, Mot.to Dismiss at PageID #117). Fed. R. Civ P. 17(b) provides the "capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." GGB was incorporated in Ohio. (ECF No. 1-1, Compl. at PageID #7).

Ohio Revised Code § 1701.88(A) provides a dissolved corporation "shall cease to carry on business and shall do only such acts as are required to wind up its affairs, or to obtain reinstatement of the articles…." Ohio courts have held that with the exception of winding up, sections 1701.88(A) and (B) take away a corporation's capacity to commence a suit after its articles of incorporation have been cancelled. *See e.g., Superior Piping Contractors, Inc., v. Reilly Industries, Inc.,* 2003 WL 22806413, *2-3 (Ohio Ct. App. 2003) (when articles of incorporation have been cancelled, a corporation has no standing to initiate a lawsuit and the only exception is that the corporation shall do only such acts as are required to wind up its affairs.); citing *Bain Builders, et al. v. Huntington National Bank,* 2001 WL 777011, *3 (Ohio Ct. App. 2001) (A lawsuit maintained by a dissolved corporation must be for the purpose of winding up its affairs or be based on a claim that accrued during its incorporation.).

Plaintiffs failed to address this argument in their opposition, and they have not made any allegation that this action was commenced in an effort to wind up GGB's affairs. However, even if it were, "any action for breach of contract cannot be construed to be related to the winding up of

9

its corporate affairs. *Id*. Accordingly, Plaintiffs have not demonstrated that GGB has standing to bring this breach of contract action.

**B. Intentional Misrepresentation**

JP Farley argues that Plaintiffs failed to adequately plead their claim for intentional misrepresentation with particularity pursuant to Fed. R. Civ. P. 9(b)[15] and that it should be treated the same as a claim for fraud because it has been removed to federal court. (ECF No. 5, Mot. to Dismiss at PageID #117). Plaintiffs' opposition fails to address the particularity argument and instead focuses on the state law requirements for pleading intentional misrepresentation. (ECF No. 19, Opp. at PageID #239-40). The Court agrees that Plaintiffs' intentional misrepresentation claim should be analyzed like a fraud claim and that federal pleading requirements apply to this action, as it has been removed to federal court. *See Girgis v. Countrywide Home Loans, Inc.*, 733 F. Supp. 2d 835, 856 (N.D. Ohio 2010) ("An intentional misrepresentation is a form of a fraudulent representation, and thus these claims will be considered as one" and "[c]laims of negligent and intentional misrepresentation (i.e., fraud) must be pled with the particularity"); *Buescher v. Baldwin Wallace Univ.*, No. 1:13 CV 2821, 2014 WL 1910907, at *3 (N.D. Ohio 2014) (stating that "[i]t is not disputed that [intentional misrepresentation] must be plead with particularity"); *Dooley v. Wells Fargo Bank, Nat. Ass'n*, 941 F. Supp. 2d 862, 867 (S.D. Ohio 2013) (dismissing fraud and intentional misrepresentation claims for lack of particularity because they "are essentially the same claims").

"In complying with Rule 9(b), a plaintiff, at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *U.S. ex rel. Bledsoe*

---

[15] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

*v. Community Health Systems, Inc.*, 501 F.3d 493, 504 (6th Cir. 2007); quoting *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir. 1993) (internal quotation marks and citations omitted). Plaintiff's claim fails to include allegations regarding the time and place of the alleged misrepresentation as well as any detail as to the content of the misrepresentation (such as whether they were told the payments were made, when they actually were not), and simply states that misrepresentations regarding payments were made. (ECF No. 1-1, Compl. at PageID #17). Plaintiffs also failed to plead any allegations relating to an alleged fraudulent scheme. Accordingly, Plaintiffs claim for intentional misrepresentation is insufficient and is dismissed for failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** J.P. Farley's Motion to Dismiss (ECF No. 5).

**IT IS SO ORDERED.**

Date: August 21, 2023

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**